## NEW YORK CASUALTY CO. v. BYRD.

### No. 5785.

Court of Civil Appeals of Texas. Texarkana.

April 11, 1941.

Rehearing Denied May 1, 1941.

Lincoln & Harris, of Texarkana, for appellant.

Wm. V. Brown, of Texarkana, for appellee.

WILLIAMS, Justice.

Appellee, Frank Byrd, claimant below, was awarded judgment for 401 weeks' compensation for alleged total and permanent disability to labor as a result of alleged general injuries received by appellee on August 22, 1938, while engaged in the usual course of his employment with the Hunter Transfer & Storage Company. The 401 weeks' compensation, less 39 weeks' payment theretofore received by appellee, was ordered paid in a lump sum. Claimant's allegations and the pleadings of appellant, New York Casualty Company, the insurance carrier, omitting such portions not pertinent to or necessary to state in consideration of claimant's first nine propositions, read:

"Plaintiff alleges * * * that on or about the 22nd day of August, 1938, * * * he received injuries to the physical structure of his body in the following manner, to-wit:

"While plaintiff was standing at the side of the door at said warehouse * * * a truck * * * backed into the doorway and the tail-gate of said truck caught plaintiff's right leg between the door jamb and said tail-gate, crushing and breaking the bones of said right leg and injuring, tearing, and lacerating the muscles, tissues, ligaments, blood vessels, nerves and membranes of said right leg, from which said injuries this plaintiff was rendered totally incapacitated, and plaintiff alleges that he is permanently incapacitated as result of said injury, in that since receiving said injury he suffers constant pain in said leg, and when he walks on said leg the same pains and hurts him and the pain radiates from the point of said injury to his toes and from the point of said injury up his thigh into his hip and back, * * *

"Plaintiff alleges that after receiving said injury * * * his leg * * * was placed in a plaster cast from his hip to his toes on his right leg, * * * and remained on plaintiff's leg for a period of three or four months.

"Plaintiff alleges that since receiving said injuries he has been unable to work on account of the misery and pain suffered by him, * * * when he attempts to move or use said leg and the pain radiates from said injury to his hip and back."

Appellant answered with a general demurrer and various special exceptions. Appellant, in its pleading, admitted the wage-scale; all jurisdictional questions involved in claimant's appeal from the decree of the Industrial Accident Board; and that the injury occurred in the course of claimant's employment. Save and except

such admissions, appellant interposed a general denial. In answering further, appellant " * * * denies that plaintiff is in any event entitled to compensation as and for total and permanent incapacity and alleges that plaintiff's injuries are specific and fall within the provisions of that portion of Section 12, of Article 8306, Revised Statutes of 1925, providing compensation at the rate of 60% of his average weekly wages for such portion of one hundred twenty five (125) weeks as during which he was totally and permanently incapacitated to perform labor from August 22, 1938, and for such percentage of the total and permanent loss of the use of his leg and foot below the knee as has resulted from such injuries; * * *"

The court defined the terms "injury", "permanent", "total incapacity", and "partial incapacity." Special issues and their answers by the jury were:

"No. 1: Do you find from a preponderance of the evidence that the plaintiff's total incapacity to labor on account of the injury received by him on August 22, 1938, is permanent?" Answer: "Yes."

"No. 2: Do you find from a preponderance of the evidence that this is a case in which a manifested hardship and injustice will result to the plaintiff if the defendant fails to redeem its liability, if any, owing to him in one lump sum rather than in weekly installments?" Answer: "Yes."

"No. 3: For what length of time do you find from a preponderance of the evidence plaintiff's total incapacity to labor has continued, or will continue after the 22nd day of August, 1938? Answer in number of weeks." Answer: "Permanent."

"No. 4: Do you find from the evidence that the plaintiff, Frank Byrd, sustained partial incapacity to labor as a result of injuries received by him on August 22nd, 1938?" Answer: "No."

"No. 10: Do you find from a preponderance of the evidence that plaintiff's incapacity to labor is due solely to the loss of the use of his leg at or below the knee?" Answer: "No."

Issues No. 5 to No. 9, inclusive, were not answered, these being conditional upon affirmative answer to No. 4. The above were the only issues submitted or requested by either litigant.

Appellant's first six propositions are substantially incorporated in the 6th, which reads: "In a compensation case where the plaintiff relies upon a general injury for total and permanent incapacity to perform labor, the issues of general injury and total incapacity and permanent incapacity are independent grounds of recovery upon which there must be a jury finding to entitle the plaintiff to a judgment as sued for."

In propositions 7, 8 and 9, closely related to the foregoing, appellant asserts that special issues Nos. 1, 3 and 10, as worded, assume as a fact that claimant was totally incapacitated to perform labor on account of the injury received by him on August 22, 1938. It is apparent from the allegations in the petition that appellee sought recovery for alleged total, permanent incapacity to labor, growing out of an alleged general injury to his body. The judgment awarded him is upon this basis. There is no jury finding that his injuries had resulted in a total incapacity to labor. Special issues Nos. 1, 3 and 10 assume that from a general injury to the body, plaintiff has suffered a total disability to labor. Appellee admits that the burden of proof was upon him to establish such fact. But in this connection, appellee asserts, "the fact that appellee was, under the uncontradicted evidence, totally disabled for a period of time, it was not necessary for the court to submit such issue to the jury;" "the only question to be determined by the jury was as to the duration."

The "tail-gate" of the truck struck appellee's right leg below the knee. The blow broke the little bone and shattered badly the big bone, both below the knee. It was a serious break. His leg was X-rayed and immediately placed in a cast and so kept for fifty-three days. Appellee was confined to bed during this period and probably for ninety days. For an additional period of three or four weeks thereafter he used crutches but was not permitted to place any weight upon the injured leg. Without question, during above period of time, appellee was totally disabled to labor. It is equally true that during this same period appellee then suffered a total loss of the use of the leg. For either, he was entitled to $7.50 weekly compensation, which he received up to May 22, 1939. Art. 8306, Secs. 10 and 12, R.C.S.

Months prior to this trial appellee had been dismissed from further treatment by

Dr. Collum, the attending physician, the latter placing the time in February, and appellee claiming it to be in May. Dr. Collum testified that at the time he dismissed appellee an X-ray of the leg showed that the bones had knitted in place and healed in good shape; that appellee was then able to work; and he had informed appellee several weeks prior thereto that he was able to work. He further testified that he had observed appellee walking a number of times and from his observations the injury had caused no hop, limp or impediment in his walk. He claims from an actual measurement that both legs are of the same length. His testimony is that the injury had not affected the sciatic nerve or affected any other part of his body. He placed a 15% disability in the movement of the knee-joint on the right leg, caused by the cast, stating that this would improve somewhat with exercise of the leg, but not entirely; this impairment to the knee would not affect his ability to do manual labor. No other medical testimony was furnished by litigants. Appellee testified that he had performed no work since he received the injury; was unable to bear much weight on this leg; when walking, pain goes up his hip and back; and pain goes up his hip and back when he stoops over, or attempts to pick up anything; and he had not detected any improvement in this condition. His wife corroborated this with additional testimony that appellee complains of pain from his hip to his toes; that he groans and tosses in his sleep; and that she constantly rubs him with snake-oil and alcohol in an effort to ease the pain. Neighbors testified that appellee "walks with a cane," "crawls about with use of a stick," or "drags his leg." The payment of compensation for the first 39 weeks' compensation is equally referable to loss of use of the leg as for total incapacity to labor. But if it be assumed that such payments were made for total disability to labor and not for total loss of use of the leg, many months had elapsed since appellant discontinued such payments. In May appellant discontinued and refused further payments of compensation. Appellant then and at the time of this trial asserted appellee's injury was confined to his leg with only a partial incapacity to his leg, and that he was then able to work. This trial was had December 14, 1939. The evidence above detailed raised such an issue. The foregoing summary would not justify the conclusion that the evidence

was undisputed or uncontradicted that on date of this trial, December 14, 1939, appellee was then totally incapacitated to labor. In the absence of an affirmative jury finding upon this, an ultimate issue, the cause will be reversed and remanded. Article 8307, Sec. 5, R.C.S., Vernon's Ann. Civ.St. art. 8307, § 5; Lawler's Workmen's Compensation § 301; 45 Tex.Jur. p. 809, § 295; Russell v. Great American Indemnity Co., 127 Tex. 458, 94 S.W.2d 409. The observations above made are likewise applicable to the absence of jury findings establishing that the specific injury to the leg has resulted in general injuries to the body.

The judgment is reversed and the cause remanded.